The next case today, number 241239, Leonardo Goncalves Leao v. Pamela Bondi. Will counsel for petitioner please come up and introduce yourself on the record to begin. May it please the court. I'm attorney Annalise Ferrugio and I represent the petitioner, Mr. Leonardo Leao. With the court's permission, I would like to reserve two minutes for rebuttal. The relevant statutes at hand in this case are ambiguous. The only logical appropriate interpretation of the cancellation of removal statute. Push the microphone up a little bit, please. Thank you. The only logical appropriate interpretation of the cancellation of removal statute would be that the hardship should be considered in the age of the child frozen at the time that the evidence is considered by the immigration judge. At a minimum, the agency's own excessive delay should not disqualify a non-citizen from a statutory right of relief. That would render that statutory right into a matter of the agency's grace. In this case, particularly Mr. Leao's son was 17 years old at the time the immigration judge heard the evidence. By the time the Board of Immigration Appeals decided his case, he was 21 years old, due only to agency delay. We're talking here, if I'm not mistaken, it's almost four years, correct? Over four years, Your Honor. And you, I think the best authority you have to support is the recent Second Circuit decision in Cruz v. Garland, correct? That is correct, Your Honor. There's also a Tenth Circuit case, Your Honor, that addresses that when there is improper delay, as there is in this case, the Board of Immigration Appeals needed to have considered that improper delay and the case should be remanded back. But I would also like to talk about the language of the statute itself. The statute provides that the Attorney General may cancel the removal of a non-citizen and grant lawful permanent residency. If cancellation is granted, lawful permanent residency is automatic. If that non-citizen establishes that a qualifying relative would suffer exceptional and extremely unusual hardship, that is part of the same requirement under the statute. No time is specified in terms of the age of the child. Evidence is considered at the time of the hearing. Other requirements- Yes, Your Honor. The government doesn't, it doesn't seem to, it says it could defend the ruling here about sort of aging out. But it doesn't ask us to do that. It really focuses on the hardship standards. So if, why should we engage with that issue when the government doesn't seek to defend that position? Your Honor, I think that this court could choose to not engage because the government in this case has not raised the aging out issue. I also think that this court could, like the Second Circuit and like the Tenth Circuit, address it once and for all. Because the government has caused undue delay in thousands of cancellation cases. The cases linger before the Board of Immigration Appeals for years and years. And children are aging out, and the government is denying cancellation of removal. So absolutely, Your Honor, the government has not raised it in this case. But this court could take an opportunity to address the aging out issue once and for all at this point. Your Honor, I would- Your Honor, would you be asking, if we remand, would you be asking us to remand the same way the Second Circuit did? First to have the agency determine if the delay was undue, and then if so, the reasons, correct? Yes, Your Honor. That's what I would ask of this court. Your Honors, I would also like to address a couple more points on the aging out issue that I think haven't been focused on. The application form that is used to apply for cancellation or removal, Form 42B, literally states that the evidence will be considered in an immigration hearing before the immigration judge. What the government is suggesting is that evidence be frozen with respect to hardship, but that the age of the qualifying relative continues to move. So that means that if the Board of Immigration Appeals reaches a case by the time that a child is 20, the evidence of hardship is still being considered as if the child is 17, because there is no further evidence of hardship that has been provided to the Board of Immigration Appeals. But if the child is unlucky enough to reach, in one day, the age of 21, then that disqualifies their parent for cancellation of removal. That is an unreasonable reading of the statute. I refer this court to Santana v. Holder, which stands for the holding that a court should not adopt a construction of a statute which would result and condition a statutory right on government's grace. And further, Your Honor, in Griffith, Oceanic Contractor, interpretations that would result in absurd results, when they can be avoided, they should be avoided. With that, Your Honor, I would like to turn particularly to the hardship in this matter. The facts established in this case meet the exceptional and extremely unusual hardship standard for cancellation of removal. The agency requires guidance from this court to interpret circumstances that are presented in this case. It is true that there is case law that has addressed hardship. But none of the case law addresses the particular hardship in this case. In this particular case, Your Honors, what we have is a child who was descending into criminality and with severe mental health issues. Mr. Leon's son was in a downward spiral, unwilling to accept treatment. The case law addresses situations where treatment and education would be available. In this case, at the time of the hearing, treatment and education was available to Mr. Leon's son. Except he was refusing to accept treatment and education because at the time of the hearing, he had been suspended from school, he had been placed on probation, he had been done with probation, he was placed on probation again. He was suspended from school again. He then was charged with larceny over 250. After that, he was charged with having a box cutter. So it wasn't that treatment wasn't available at the time of the hearing, it was that this child was refusing to accept treatment. So if I look at what the BIA found, the BIA made three findings. The first thing was that the child's biological mother was the primary caretaker. Okay, that's fair. However, Mr. Leon was very present in this child's life. Mr. Leon provided not only financially, but also emotionally for the child. There was a letter from the child's mother that described her and Mr. Leon as a unit when it came to caring for their son and addressing his troubles. The immigration judge- But his actual presence in the country did not prevent the spiraling down. That is correct. Actually, Your Honor, his actual presence in the country didn't, but it prevented it from getting worse. His troubles actually began, and that is actually a fact on the record. When Mr. Leon was temporarily arrested by Immigration and Customs Enforcement. And yet, the immigration judge seems to think that even though Mr. Leon's son's troubles started when Mr. Leon was temporarily arrested, permanently removing his parent, his father from the country, and permanently separating them would not be exceptional and extremely unusual hardship. I would also, Your Honor, like to point out that there was nothing in the record that would indicate- But you're saying it's an exceptional and unusual hardship because of the prospect of him being taken away. One of the exceptional and the other also the fact that he will not be present to provide the support that his son needed in conjunction with his son's mother. If he was present, he was still spiraling down. That is correct, Your Honor, however- And what is the assumption that if he was present and spiraling down, that there's going to be a nexus between him not being present and spiraling down? I think the assumption, if I may, Your Honor, I think that the assumption is not that he's present and he won't spiral down. The assumption should be based on the facts that are on the case that if he's not present permanently, he will spiral down further. Because what gave start to the spiraling was Mr. Leon's arrest by Immigration and Customs Enforcement. Again, your argument is that this apparently was overlooked, you would say, by the administrative agency that all of these problems began when the father was arrested. And so all the problems he has in the wake of that, it's sort of like a proxy for what it would be like if the father separated. Because the child is so traumatized by the prospect of the father being separated that it's a fair way to, in a way, it's kind of a test of what it's going to be like if he's actually separated. I gather that's your position. That is correct. That is our position, Your Honor. In addition to other facts that were overlooked, the factual finding that the immigration judge made with respect to the separation was that Mr. Leon could provide support telephonically to his son. So support via text for a kid that was spiraling into drug addiction. So that was a factual finding that was not supported. And the Board of Immigration Appeals failed to indicate what was the standard of review that it was using. Because even if there were factual findings on the immigration judge's part, those factual findings should have been reviewed under clear error. And the Board of Immigration Appeals did not at all indicate what standard of review it was using to look at the legal questions that had been raised by petitioner, neither to the factual questions that had been raised by petitioner. So in this particular case, at a bare minimum, this case needs to be remanded so the Board of Immigration Appeals can actually explain what is the standard of review that it used when looking at the case. Thank you, Your Honor. I respectively reserve two minutes for appeal for rebuttal. Mr. Schuchard. Good morning, Your Honors. Excuse me. I'm Spencer Schuchard for the United States. May it please the Court. I'm going to start by echoing what my colleagues have said this morning about the standard of review. But rather than repeating what they've said or what I said in my brief, I'm just going to lay out for you our view of what's actually on the table for review in this case, which is whether this troubled young man who's refusing help would suffer exceptional and extremely unusual hardship if his father were removed to Brazil. All other factual challenges that the petitioner has raised are off the table. That includes the extent to which the petitioner contributed to his son's well-being, the extent to which that would change if he were removed, the seriousness of his medical condition, if he even has a medical condition. All of those things under Wilkinson are going to be out for review. So the only thing you have is the ultimate hardship determination and then any legal challenges. And to, did you have a question? I thought you were about to. No, go ahead. I'm sorry. You addressed something to my colleague in the last that I wanted to respond to, which was that it seems like only legal challenges would survive. But I don't think that's correct. What happens is this hardship determination is deferentially reviewed. So what we have here is does this, would this man suffer enough hardship given all the underlying facts compared to the standard? That's something that you review for substantial evidence. But mixed questions are bundles of facts. Those, the facts that are bundled together in the determination are themselves findings by the agency that can't be reviewed. So. So I think we are going round and round on this. But so you're saying that the ultimate determination of the administrative agency that the hardship standard was not met. The only question we should ask is whether substantial evidence supports that decision. And that question can be phrased in another way. If the evidence does not compel a contrary result, that means it is supported by substantial evidence. Is that, is that your position? Is that the standard we should be applying? That is our position. I'm sorry? That is our position. Okay. Okay. And is it your position that that substantial evidence standard only applies to that ultimate determination? For example, if we were to, just to take an example from the first case today, have you heard that, that serious health issue? If we decided that the, there was not substantial evidence to support that, we can't do that. Because that would be reviewing specific facts. Would that be your position there? That's correct. That's an example the Supreme Court made explicit in Wilkinson. Okay. So the, just to be clear, the substantial evidence standard, in your view, only applies to that ultimate question, the substantial evidence support the board's, the agency's ultimate determination that the hardship standard was not met. Is that your position? That's the position. You take the facts as the agency found them and decide for yourself, or not decide for yourself, apply the substantial evidence test to whether or not those facts as found, unaltered, rise to the level of exceptional, extremely unusual hardship. And that standard is hardship that would be substantially beyond what one would expect from a removal. It's all, it's pretty squishy. I don't think the Supreme Court gave us a lot of guidance here. And I, but I don't think in practice it's going to be all that different from what you're used to with these cancellation cases. Because these, the factual determinations and the hardship determination was unreviewable before, except for legal questions. So the challenges that came cast everything as a legal error. The agency got the standard wrong, or the agency applied the wrong standard. Those are really the two forms of error that you would see in these cases. And that's essentially what the petitioner's arguing here, even though what we're hearing is actually a challenge to the fact finding. You know, you can hear, just as my colleague was up here arguing just a couple minutes ago, actually the petitioner did a lot more for his son than the IJ found. The medical condition was more serious than they claimed. These are all challenges to how the agency weighed the evidence. And those are going to be out jurisdictionally still, even after Wilkinson. And I'd like to kind of address our view of how, of how the hardship is being presented in this case. Because it's a little hard to parse, at least for me. To the agency, the petitioner essentially presented two different kinds of hardship, right? Focusing mostly on separation. It was the harm that separation had done, and the harm that the separation would do. And the harm that separation had done, as the agency found, was negligible. Petitioner was in custody for a month. He was in the, he was out of custody after that. They had, they didn't live together and had never lived together. So the effect of separation was essentially nothing. And so given his circumstances, what the agency found was that removing him to Brazil would not change that, given the fact that there are telephones and internet and everything of the sort in Brazil. So what's left is the second sort of, what was a kind of a minor bit of the hardship in the appeal brief, but it's kind of the major portion now, is the worry, right? The child is, or the adult child, is worried about what's going to happen to himself, his father. This is not an unusual circumstance in children whose families are facing some sort of removal consequence. You've seen, as you mentioned, Judge Helpe, you've seen hundreds of these, right? Children, they react to this. They eat less. They smile less. They withdraw. They act out. It's not unusual. And these are hard cases. But this is essentially a sunk cost here. Because cancellation of removal does not protect people from worry about what might happen to their status. That's not what this is for. It can't unring the bell of petitioner having received a notice to appear and being placed in removal proceedings. It's not a matter of equity to place you in status quo ante. That's not something that's going to be possible here. And petitioner was properly placed in removal proceedings. That happened after he had encounters multiple with law enforcement. So cancellation is not going to be a panacea in terms of getting rid of that sort of Damocles. It's always going to be over his head until maybe eventually one day down the road he adjusts his status or naturalizes. That worry reasonably would always be there. So I don't think this is the kind of hardship that is meant to be captured by the cancellation statute where the standard is. Hardship substantially beyond what would be anticipated by a removal. Not by the fear of a removal. It's kind of a category error. And I don't, but I think viewing it this way is how I've, that kind of attack I've taken. And I don't think it really matters one way or the other. I think the agency viewed it correctly as not making a difference because it's a harm that's already happened. Other than that, I just want to touch a little bit on the issue of aging out. And again, our stances here is we don't need this and I would urge you not to address it in this case. But just to respond to a couple of the points the petitioner made on this one. So his argument is semantic, right? The statute says is present tense. It's a verb tense argument about a person who is the child of a non-citizen. The board dealt with that, I think, recently. Let me just interrupt you. When you said we don't address the aging out. So when we consider everything, we should consider it as it was four years ago, just on the record, right? You mean in petitioner's formulation? Yeah. Right. I don't, that's not how the board addresses these cases, though. And that makes sense because if you were to grant the petition and send the case back, the IG is going to have to make rulings about a hardship to a child that doesn't exist anymore. About, you know, he's going to have to make new findings. Because the situation has obviously changed. This is going on six years since the appeal was filed. Well, if the case were to go back and that would be prospective, there'd be no children then. Exactly. There's nothing to base it on. The point of cancellation is to prevent hardship to the United States citizen, children, or parents. That doesn't exist in this case. Counselor, if we could go back and the way you explained it a couple of seconds ago as a hardship beyond the usual. I'm trying to understand how the Montreal factors, which go to length of residency, economic, financial, etc. How are we supposed to use those factors in understanding what is beyond the ordinary? The standard is ill-defined. It's just those kind of normative words, severe hardship, beyond what you'd expect. It kind of partially rests on common sense. There's not a lot of even published board case law about it, because it was never reviewable. And I think it's almost as if it wasn't meant to be reviewable, if you don't mind, may I finish my answer? Yes, please. I think we'd all be better off if it wasn't reviewable, but that's not the universe we live in here. So we have to navigate these standards of review and legal standards. So the standard is essentially hardship substantially beyond what you'd normally expect. And then to discern that, you look at the circumstances for the family, education, wealth, disability, medical, those kinds of things. But none of those things are particularly defined. You are in the process of helping define that as we go. So you're going to have to see what's- None of those factors seem to be- help explain what beyond the usual is. I think I could understand if someone had a- the qualifying person had a serious medical problem. But beyond that, the others are so squishy, it's hard to understand how we're supposed to look at them and in the aggregate make a determination that it was a legally wrong determination. All you're left with is the Supreme Court's guidance is to look at the determination the agency made based on the facts that it found, facts that you can't disturb, and decide if that's substantially beyond what someone would expect. That's the only guidance you have. Thank you, Counselor. Thank you. Ms. Araujo, you have two minutes, rebuttal. Thank you, Your Honor. Attorney Annalisa Araujo for the petitioner, Lerner and Santos. And hold the microphone closer. Thank you. Your Honors, this is a mixed question of law and fact. So to address the standard, even though Wilkinson does have dicta that the review should be differential to the agency, that does not mean that every factual finding that the agency made is not reviewable. Even at a high standard, it would be reviewable under clear error. The government seems to be suggesting in its argument that if the agency says something, it cannot be challenged under any standard. That's not what Wilkinson stated. What Wilkinson stated is that when you have a mixed question of law and fact, then in that situation, it does not have to be fully differential to the agency. And what I would suggest is that there needs to be a sliding scale. And this sliding scale is determined by how much a question is one of law and how much a question is one of fact. I refer this court to a recent case from the First Circuit, Diaz-Valdez v. Garland, in which the court was assessing whether established facts meet the standard for equitable tolling. And the court decided that in that case, it was subject to de novo review. This court made an analysis of the situation, the law, and determined de novo review. What I am suggesting, Your Honors, that in a cancellation case, it's about how was the case decided. Are we talking more about questions of law or are we talking more about factual findings? The petitioner in this case is challenging the application of the law to the facts that were presented. The government, in its brief and in its argument, is attempting to make post hoc justifications for the findings by the immigration judge. Counsel, are you saying that that ultimate determination, the cumulative aggregate hardship determination, are you suggesting we can review that de novo? I'm suggesting you can consider reviewing it de novo, but I'm also suggesting that you don't have to make the decision that it's a one-size-fits-all. We can consider deciding it de novo. What do you mean by that? Should we or should we not? Your Honor, what I am suggesting is that the court could set a one-size-fits-all, but that it should not. That it should leave a mixed question of law review in a sliding scale that is dependent on how much the question presented to the court is one that is of law and how much is that of one of fact. There's no question that these determinations are heavily fact-bound. I mean, it's all about the facts, the issues of age, the medical conditions of the family members, economic circumstances. Those are all factual questions. There's no law in that. Your Honor, for example, in this case before the court, the fact pattern that was presented in this particular petitioner's case has not been addressed by case law before. The case law that has been cited, such as matter of racinas, it considers a completely different fact pattern, which is a child that would lose access to services or would lose access to resources. This particular case presents a fact pattern that did not ever get presented or considered. So it's first instance to this court to see this fact pattern. So this court could address whether or not the facts that are presented in this case and are actually factual findings in this case fit the standard of cancellation of removal. You don't have to review the factual findings, DeNovo. You could review the factual findings as clear errors. But how those findings fit the standard of exceptional and extremely unusual hardship, that is a question of legal application. Okay. Thank you, Counsel. One more question. Sorry. But how is, and I know you disagree, but I'm going to use the word anyway, how is anxiety that arises from the possible deportation of a parent, how is that exceptional and extremely unusual? In this particular case, you have to consider the other things that had already happened to that child. The child may be anxious and maybe see a therapist and get that resolved. In this particular case, this child dropped out of school, engaged in substance abuse, was charged with multiple crimes. So it's not just anxiety. It's easy for the government, again. Was there evidence that this happened because of the possibility of deportation? There was a letter from the child's mother who was the Was there some medical evidence? So there was not treatment, therapy records because the child in this particular case refused to engage in medical care. There was one piece of evidence that the child engaged and was referred and engaged briefly in substance abuse treatment on the record. And that was not considered weighed by the immigration judge or the Board of Immigration Appeals.